IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01380-EWN-MEH

JONATHAN BURROUGHS,

    Plaintiff,

v.

THE HOME DEPOT, et al.,

    Defendant.

---

## RECOMMENDATION ON MOTION FOR SUMMARY JUDGMENT

---

**Michael E. Hegarty, United States Magistrate Judge.**

Pending before the Court is Defendant's Motion to Dismiss [filed November 2, 2007; doc #14]. Because Defendant submitted evidentiary materials in support of its Motion, the Motion was converted to a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. [Doc #21] By Order of Reference to United States Magistrate Judge, this matter has been referred to me to conduct proceedings in this civil action pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed.R.Civ.P. 72(a) and (b). The matter is fully briefed, and the Court recommends that, for the reasons stated herein, the Motion be **granted**.[1]

---

[1] Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d

**BACKGROUND**

Plaintiff initiated this action against Defendant on June 29, 2007, alleging discrimination based upon his race (Caucasian) and retaliation for filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Complaint at 2. Plaintiff is a Caucasian male, who began working for Defendant in January of 2003. *Id.* at 4. He alleges that his night manager would use profanity around him and other non-black employees on an occasional basis. *Id.* In addition, Plaintiff asserts that his night manager would talk to black employees socially but would only talk to white employees when he had something for them to do. *Id.* Plaintiff was eventually terminated on or about September 10, 2004 for accumulating too many points for tardiness or absences. *Id.*

On September 23, 2004, the EEOC entered into a Consent Decree with Defendant in consolidated class actions brought in this Court, Case Nos. 04-D-1776 (BNB) and 03-D-0126 (BNB). Under the Consent Decree, individuals determined to be class members were entitled to receive payment from the Settlement Fund established by Defendant, in exchange for accepting the terms of the Class Member Release. Motion, Exh. A. Plaintiff was a class member, and on October 10, 2005, he executed a Release, discharging Defendant from liability on all Title VII claims for retaliation and for hostile work environment based on gender, race, or national origin, arising from events that occurred between January 1, 2000 and September 23, 2004. *Id.*

During the Consent Decree proceedings, the EEOC issued its Determination on Plaintiff's Charge of Discrimination. Complaint at 5. Consistent with the Consent Decree, the EEOC found that "Respondent manifested a pattern and/or practice of hostile work environment based on gender, race and national origin, and retaliation during the period of January 1, 2000 and September 23, 2004." *Id.* The EEOC expressly stated that "the Commission makes no finding regarding any

---

1159, 1164 (10th Cir. 1986).

other allegation made in the charge." *Id.*

The copy of the charge of discrimination attached to the Complaint constitutes the sole factual basis for Plaintiff's claims. The charge alleges race discrimination and makes no reference to any claims for retaliation. Complaint at 4. In fact, Plaintiff makes no allegations of retaliation in the Complaint itself, other than to list it as a claim. *See* Complaint at 2.

In response to Plaintiff's Complaint, Defendant filed the within Motion to Dismiss arguing that Plaintiff is barred from bringing his Title VII claims pursuant to the Release he executed in October 2005. Motion at 4. Defendant attached the Release in support of its argument. Motion, Exh. A. The Release provides, in pertinent part,

> Under this Consent Decree, individuals who are determined by the EEOC to be class members may receive payment from the Settlement Fund in exchange for accepting the terms of this Class Member Release ("Release"), which releases The Home Depot U.S.A., Inc. from all Title VII claims for retaliation, and all Title VII claims for hostile work environment based on gender, race, or national origin, arising from events which occurred between January 1, 2000 and September 23, 2004.

*Id.* Plaintiff's signature appears at the bottom of the Release, along with the date, his social security number and his address. *Id.* Defendant contends that, since the Complaint's allegations include discrimination only during the time of Plaintiff's employment -- January 2003 through September 10, 2004 -- the Release covers the same time period, and Plaintiff's claims are subject to it. Motion at 4.

In addition, Defendant argues that, even if Plaintiff's claims are not barred by the Release, Plaintiff has failed to state claims for race discrimination involving a hostile work environment, and for retaliation in violation of Title VII. Motion at 5-10.

After determining that the Defendant wished to provide Exhibit A as evidentiary material in support of its Motion, the Court converted the Motion into a Motion for Summary Judgment on November 21, 2007, and ordered Plaintiff's response, including evidentiary material, to be filed on

or before December 10, 2007 [doc #21]. Plaintiff did not respond to the Motion, nor to the Court's order.

## **DISCUSSION**

### I. Standard of Review

Summary judgment serves the purpose of testing whether a trial is required. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law. *Id.* at 323; *Maldonado v. City of Altus*, 433 F.3d 1294, 1302 (10th Cir. 2006).

If the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. *Hysten v. Burlington Northern and Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002); Fed. R. Civ. P. 56(e). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in

4

the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1256 (10th Cir. 2005).

**II.     Analysis**

Even drawing all inferences in the light most favorable to him, I find that Plaintiff has failed to show any genuine issue of material fact that would justify permitting this case to proceed. Not only has Plaintiff failed to properly respond to the Motion under *Hysten*, but the clear language of the Release demonstrates that Plaintiff's claims are barred in this matter.

Under the standard expressed by the Colorado Supreme Court in *Heil Valley Ranch, Inc. v. Simkin,* the Release agreement in this case is clear and unambiguous. *See Heil Valley Ranch, Inc. v. Simkin,* 784 P.2d 781, 785 (Colo.1989) (barred claims where the "intent of the parties was to extinguish liability and ... this intent was clearly and unambiguously expressed"). Where a release has but one reasonable meaning - as here, "all Title VII claims for retaliation, and all Title VII claims for hostile work environment based on gender, race, or national origin, arising from events which occurred between January 1, 2000 and September 23, 2004" - then, it is appropriate to find that the claims are barred by the unambiguous terms of the release. *See Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1237 (10th Cir. 1999).

The Release provisions here are written in simple, clear terms that are free from legal jargon. Moreover, the Release is not inordinately long (one page) or complicated. Thus, the Court finds that the Release executed by the Plaintiff on October 5, 2005 bars any and all Title VII hostile work environment and retaliation claims brought by the Plaintiff for incidents occurring between January

5

1, 2000 and September 23, 2004.

Here, the entire factual support provided by Plaintiff for his claims is provided in a copy of the charge of discrimination presumably filed with the EEOC.[2] The charge reflects that the alleged discrimination took place between February 10, 2004 and September 10, 2004. Complaint at 4. Plaintiff alleges that he was "harassed by the Night Manager" during this time, and was forced to "pick up the slack for the time the Black employees were socializing and not working." *Id.* In addition, Plaintiff alleges that the disciplinary point system used by Defendant, upon which Plaintiff's termination was based, was administered unfairly because "employees who were favored by management were no given points for tardiness or absences." *Id.*

To the extent Plaintiff's claims constitute "retaliation" or "hostile work environment based on race," his claims are clearly barred by the Release. To the extent Plaintiff claims that he suffered an adverse employment action (other than harassment) based upon race, then the only alleged incident that might constitute an adverse employment action under Title VII is Plaintiff's termination of employment. *See Hillig v. Rumsfeld*, 381 F.3d 1028, 1031-33 (10th Cir. 2004).

In a traditional Title VII discrimination claim brought by a member of a minority group, a plaintiff can establish a prima facie case of discriminatory termination by showing (1) that he belongs to a protected class, (2) that he was qualified and satisfactorily performing his job, and (3) that he was terminated under circumstances giving rise to an inference of discrimination. *Martin v. Nannie & the Newborns, Inc.,* 3 F.3d 1410, 1416-17 (10th Cir.1993). While Title VII also prohibits discrimination against non-minorities, the presumptions applicable when a plaintiff belongs to a disfavored group are not applicable when a plaintiff is a member of a historically favored group. *Livingston v. Roadway*

---

[2]The copy of the charge is neither executed nor dated; however, a portion of a notice of right to sue is attached. *See* Complaint at 4, 5.

*Express, Inc.*, 802 F.2d 1250, 1252 (10th Cir. 1986). Therefore, where reverse discrimination is alleged, under the first prong of the prima facie case, a plaintiff must instead "establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Notari v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir. 1992).

Here again, under *Hysten*, Plaintiff may not rest on his pleadings when faced with a Motion for Summary Judgment. Nevertheless, Plaintiff's Complaint itself is deficient of any factual allegations necessary to support a *prima facie* case in this matter. There is no indication that Plaintiff was "qualified and performing his job satisfactorily," and Plaintiff utterly fails to allege that Defendant is "one of those unusual employers who discriminates against the majority." Consequently, the Court finds Plaintiff has failed to demonstrate any genuine issue of material fact sufficient to allow this matter to proceed to trial.

## CONCLUSION

Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo. L.Civ.R 72.1(C), I therefore RECOMMEND that Defendant's Motion to Dismiss [filed November 2, 2007; doc #14], which was converted to a Motion for Summary Judgment on November 21, 2007 [doc #21], be **granted**, and that Plaintiff's Title VII claims against Defendant be **dismissed with prejudice**.

Dated at Denver, Colorado this 19th day of December, 2007.

BY THE COURT:

s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge